# CIVIL COVER SHEET

JS 44 (Rev. 10/20)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
American Marriage Ministries, a Washington non-profit corporation

**(b)** County of Residence of First Listed Plaintiff: King Co., WA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rocklan W. King III, Stacia M. Daigle, Adams and Reese LLP, 1600 West End Ave, Ste 1400, Nashville, TN 37203
615-259-1450

## DEFENDANTS
Russell Johnson, in his official capacity as District Attorney General for Morgan County, Tennessee; Cheryl Collins, in

County of Residence of First Listed Defendant: Morgan Co., TN
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983 and 28 U.S.C. § 2201
Brief description of cause:
Violation of Civil Rights

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 05/31/2024
SIGNATURE OF ATTORNEY OF RECORD: /s/ Rocklan W. King III

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION

| | |
|---|---|
| AMERICAN MARRIAGE MINISTRIES, a Washington non-profit corporation;<br><br>    Plaintiffs,<br><br>    v.<br><br>RUSSELL JOHNSON, in his official capacity as District Attorney General for Morgan County, Tennessee; CHERYL COLLINS, in her official capacity as County Clerk for Morgan County, Tennessee; JENNINGS H. JONES, in his official capacity as District Attorney General for Rutherford County; and COTY WAMP, in her official capacity as District Attorney General for Hamilton County;<br><br>    Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

    1.    As the U.S. Supreme Court has repeatedly acknowledged, decisions about marriage and decisions about religion are among the most intimate that a person can make. Given the importance of allowing such personal decisions in a free society, federal and state law must respect autonomous decision-making on these matters. Decisions about marriage and decisions about religion often intersect when individuals join their lives through marriage. The fundamental rights protecting both matrimonial and religious decisions thus protect decisions regarding the formal ceremony that solemnizes a couple's union: the wedding. Among these decisions is the couple's choice of whom they entrust with the responsibility of officiating their wedding. Whether a couple decides to have a judge, pastor, friend, or family member officiate their wedding, their decision is

1

entitled to respect, and the state has no legitimate reason to limit or restrict their choice of officiant. Yet the State of Tennessee is doing just that. Under color of state law and county policy, county clerks in Tennessee differentiate between would-be wedding officiants based on the perceived legitimacy of a prospective officiant's ministerial credentials. This law, policy, and practice constitutes an unconstitutional interference by the state into internal church affairs and personal decisions.

2. This is an action for declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Tennessee Constitution, to invalidate and enjoin enforcement of certain provisions of Tennessee Code Annotated § 36-3-301, as amended by Tennessee 2019 Public Chapter 415, which violate the constitutional rights of American Marriage Ministries ("AMM"), its ministers, and persons who wish to have their marriages solemnized by the AMM's ministers.

**PARTIES**

3. AMM is a Washington non-profit organization with its headquarters in Seattle, Washington.

4. AMM is a non-denominational church.

5. AMM is recognized by the IRS as a "public charity" bearing the status of a "church or a convention or association of churches" under 26 U.S. Code § 170(b)(1)(A)(i).

6. As a religious organization, AMM believes "that every couple has the constitutionally protected right to enter into the institution of marriage on their own terms, which includes the right to choose who performs their wedding ceremony." *See* "Our Philosophy on Marriage," http://www.theamm.org/about.

7. AMM's three church tenets are as follows: "(1) All people, regardless of race,

2

gender, or sexual orientation, have the right to marry. (2) It is the right of every couple to choose who will solemnize their marriage. (3) All people have the right to solemnize marriage."

8. AMM supports and facilitates couples' right to choose who performs their wedding ceremony.

9. To further its tenets, AMM ordains people as ministers.

10. AMM ordains ministers around the United States, including individuals residing in Tennessee.

11. In addition to ordaining ministers, AMM's ministry includes educating and supporting its ministers on how to perform the sacred rite of matrimony and advocating for religious freedom.

12. Ordinations conferred by AMM are administered according to the values of AMM.

13. All prospective AMM ministers must attest that they have reached the age of majority and that they undertake their request to become an AMM minister as a considered, deliberate, and responsible act. AMM ordains ministers who meet these qualifications.

14. AMM performs ordinations both through internet applications and via in-person ordination services.

15. AMM has associational standing to pursue this suit to redress its members' injuries because many of its members in Tennessee have standing to sue, the interests AMM seeks to protect are germane to AMM's purpose, and the claims asserted and relief requested do not require the participation of individual members of AMM. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1977).

16. Russell Johnson is the District Attorney General serving Morgan County, Tennessee, and is sued in his official capacity.

17. Defendant Johnson, in his role as District Attorney General, has a duty to initiate criminal enforcement proceedings. Tenn. Code Ann. § 8-7-103(1).

18. Cheryl Collins is the County Clerk serving Morgan County, Tennessee, and is sued in her official capacity.

19. Jennings H. Jones is the District Attorney General serving Rutherford County, Tennessee, and is sued in his official capacity.

20. Defendant Jones, in his role as District Attorney General, has a duty to initiate criminal enforcement proceedings. Tenn. Code Ann. § 8-7-103(1).

21. Defendant Wamp is the District Attorney General serving Rutherford County, Tennessee, and is sued in her official capacity.

22. Defendant Wamp, in her role as District Attorney General, has a duty to initiate criminal enforcement proceedings. Tenn. Code Ann. § 8-7-103(1).

## JURISDICTION AND VENUE

23. This action arises under the United States Constitution and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

24. This Court has original jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. § 1331 and § 1343.

25. The Court has supplemental jurisdiction over the state constitutional claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

# FACTUAL ALLEGATIONS

## Tennessee Ordination Statute

27. Tennessee regulates by statute who may solemnize marriages recognized by law under Tennessee Code § 36-3-301.

28. Section 36-3-301(a) authorizes ministers whose ordination occurred "by a considered, deliberate, and responsible act" to solemnize marriages.

29. Tennessee 2019 Public Chapter 415 amended Section 36-3-301(a) of the Tennessee Code prohibiting "persons receiving online ordinations" from solemnizing marriages.

30. Specifically, Section 36-3-301(a) of the Tennessee Code provides:

> (1) All regular ministers, preachers, pastors, priests, rabbis and other spiritual leaders of every religious belief, more than eighteen (18) years of age, having the care of souls, and all members of the county legislative bodies, county mayors, judges, chancellors, former chancellors and former judges of a county, a municipality, or this state, former county executives or county mayors of this state, former members of quarterly county courts or county commissions, the governor, the speaker of the senate and former speakers of the senate, the speaker of the house of representatives and former speakers of the house of representatives . . . and the mayor of any municipality in this state may solemnize the rite of matrimony. . . .
>
> (2) In order to solemnize the rite of matrimony, any such minister, preacher, pastor, priest, rabbi or other spiritual leader must be ordained or otherwise designated in conformity with the customs of a church, temple or other religious group or organization; and such customs must provide for such ordination or designation by a considered, deliberate, and responsible act. <u>Persons receiving online ordinations may not solemnize the rite of matrimony.</u>

(Emphasis added).

31. The prohibition that "[p]ersons receiving online ordinations may not solemnize the right of matrimony" that 2019 Public Chapter 415 added to Section 36-3-301(a)(2) is still in effect.

32. This current version of Section 36-3-01(a) took effect on April 24, 2023.

33. Ministers who violate Section 36-3-01(a) face the threat of criminal liability. *See* Tenn. Code Ann. § 36-3-304; Tenn. Code An. § 39-16-504(a)(1).

34. Section 36-3-304 requires that a person who solemnizes a marriage endorse the marriage license and return it to the county clerk within three days. A minister who fails to return the license "commits a Class C misdemeanor." Tenn. Code Ann. § 36-3-304.

35. Under Section 39-16-504(a)(1), ministers who knowingly return a marriage license they know is invalid may face criminal prosecution for a Class E felony.

## Prior Litigation

36. On June 21, 2019, another provider of online ordination services, Universal Life Church Monastery Storehouse ("ULCM"), sued certain county defendants with similar allegations to those AMM raises herein.

37. That case was brought in this District as Case No. 2:19-cv-00049.

38. Included in that case as defendants were representatives of Rutherford County, Hamilton County, Williamson County, and Putnam County.

39. After years of litigation, that case was settled via stipulation on August 28, 2023, with the Court signing the stipulations on August 29, 2023.

40. As part of the stipulation, defendants in that case Wamp and Jones (in their official capacities for Hamilton County and Rutherford County respectively) agreed that they would "not challenge the validity of marriages officiated or solemnized by ULCM ministers" and acknowledged that "ULCM and its ministers . . . intend to solemnize weddings in Defendants' respective counties in reliance on these stipulations."

41. Although some other language in the stipulations to resolve the case with ULCM is general, the above-quoted stipulations, as written, apply *only* to ULCM and its ministers.

42. AMM wrote to both Wamp and Jones seeking to clarify whether Wamp and Jones would apply the agreement not to challenge the validity of marriages officiated by ULCM ministers to other organizations and ministers, including AMM and its ministers.

43. AMM also wrote to representatives of Putnam County seeking the same resolution.

44. AMM received a response from representatives of Putnam County assuring AMM that it, and its ministers, would be treated equally to ULCM and its ministers.

45. Putnam County's response to AMM indicated that a copy of its response to AMM was shared with representatives of Hamilton County and Rutherford County, specifically with Defendants Jones and Wamp.

46. AMM never received a response from anyone representing Hamilton County or Rutherford County.

47. Upon information and belief, Hamilton County and Rutherford County do not intend to treat AMM and its ministers equally as to ULCM and its ministers.

**State Defendants**

48. District attorneys general are responsible for prosecuting crimes committed within their districts. Tenn. Code Ann. § 8-7-10(1).

49. District attorneys general in Tennessee have the direct authority to enforce Tennessee's criminal prohibition against false statements made on marriage licenses. Tenn. Code Ann. § 8-7-103(1).

50. The Attorney General has the duty to "give the governor, secretary of state, state treasurer, comptroller of the treasury, members of the general assembly and other state officials, when called upon, written legal opinions on all matters submitted by them in the discharge of their

7

official duties. Written opinions issued pursuant hereto shall be made available for public inspection." Tenn. Code Ann. § 8-6-109(b)(6).

51. In 2015, the Attorney General opined that online ordination that required no more than a "click of the mouse" would not satisfy the requirement of ordination pursuant to a "considered, deliberate, and responsible act." Tenn. Att'y Gen. Op. 15-14 (Feb. 6, 2015).

52. Before the 2019 Public Chapter 415 amendment to the Ordination Statute went into effect, the Attorney General opined that the amendment changed the framework for ordination. Now even "spiritual leaders" that "received their ordination pursuant to a religious custom that constitutes a 'considered, deliberative, and responsible act'" would be prohibited from issuing valid marriage licenses if they received their otherwise valid ordination online. Tenn. Att'y Gen. Op. 19-08 (June 20, 2019).

53. County clerks are responsible for distributing and certifying marriage licenses in Tennessee. *See* Tenn. Code Ann. § 36-3-103. County clerks are authorized "to record and certify any license used to solemnize a marriage that is properly signed by the officiant when such license is returned to the issuing county clerk." Tenn. Code Ann. § 36-3-103(c)(1). Furthermore, a "county clerk is prohibited from issuing a license for a marriage that is prohibited in this state." *Id.*

54. County clerks in Tennessee have relied on the above-described Attorney General opinions in refusing to accept marriage licenses returned by AMM ministers and in advising AMM ministers that they lack authority to perform weddings.

**Prohibiting AMM Ministers from Solemnizing Marriages Is Unconstitutional**

55. Section 36-3-301(a)(2) sets up favored and disfavored religious groups. Ministers of favored groups are entitled to obtain authorization to solemnize an unlimited number of marriages. Ministers of disfavored groups are not entitled to solemnize a single marriage.

56. While the State of Tennessee admits no official interest in the ceremony or ritual surrounding solemnization of marriage, the State impermissibly interjects itself into this ceremony or ritual by favoring officiants from certain favored religious organizations while excluding officiants from other religious organizations.

57. Tennessee residents entering into marriage are entitled to have their contract of marriage be solemnized, attested and officially reported by a representative of their own religion, faith or religious society.

58. Tennessee residents entering into marriage are entitled to have their contract of marriage be solemnized, attested and officially reported by a person of their own choosing.

59. Section 36-3-301(a) impermissibly burdens free religious expression.

60. Section 36-3-301(a) is not narrowly tailored to satisfy a compelling governmental interest.

61. State of Tennessee officials stipulated in an order entered on August 29, 2023, that, notwithstanding the plain language of Section 36-3-301(a)(2), the validity of marriages officiated or solemnized by ministers of the Universal Life Church Monastery Storehouse ("ULCM"), a different religious organization providing online ordination services, will not be challenged. *Universal Life Church Monastery Storehouse v. Nabors, et al.*, Stipulation and Order (Aug. 29, 2023).

62. ULCM and AMM both offer online ordination services and offer other similar services in similar circumstances. As to solemnizing marriages in Tennessee, the difference between AMM and ULCM is not based on faith or circumstances, but only that ULCM already sued Tennessee.

63. AMM ministers who wish to solemnize marriages in Tennessee face discrimination in the process of solemnization, discrimination that ULCM ministers do not after the stipulation.

64. AMM ministers face the threat of invalidation of marriages they solemnize.

65. AMM ministers face the threat of criminal penalties should they choose to solemnize a marriage.

66. Section 36-3-301(a) improperly suppresses a core tenet of AMM's religious faith: the right of all individuals to solemnize marriage if they choose.

67. As a part AMM's religious practice and expression, AMM does not make a distinction between ministers who receive their ordination online and ministers who receive their ordination in person.

68. Section 36-3-301(a) improperly discriminates against ministers who receive their ordination online as opposed to those who receive their ordination in person. Section 36-3-301(a), therefore, improperly interferes with AMM's religious practice and expression.

69. State of Tennessee officials, in choosing whether and when to apply Section 36-3-301(a), and in applying Section 36-3-301(a) inconsistently between religious organizations that provide online ordinations, unlawfully discriminate between religious denominations.

70. By barring AMM ministers from solemnizing marriages as ministers while granting that benefit to ministers of other religious denominations, even those similarly situated as AMM offering online ordination services, Tennessee Code Section 36-3-301(2) is unconstitutional.

## CLAIMS

71. 42 U.S.C. § 1983 makes liable every person who under color of state law subjects, or causes to be subjected, another person to the deprivation of any rights, privileges, or immunities secured by the U.S. Constitution.

10

## COUNT I

### Violation of the Equal Protection Clause of the U.S. Constitution

72. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

73. The Equal Protection Clause of the Fourteenth Amendment provides that states may not "deny any person within [their] jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause protects against discrimination against similarly situated individuals or implicating fundamental rights, such as religion.

74. Section 36-3-301(a)(2) gives the right to officiate weddings to ministers ordained by various religious groups but denies that right to AMM and its ministers.

75. Section 36-3-301(a)(2) reflects the state legislature's intentional and purposeful discrimination against religious groups or persons who are not members of an established "church, temple or other religious group or organization" or part of a religious organization that ordains ministers in the legislature's preferred manner, in violation of Plaintiffs' rights under the Fourteenth Amendment.

76. Additionally, the state's willingness to stipulate to allow ULCM's ministers to solemnize marriages, but not AMM's, discriminates against AMM ministers similarly situated to ULCM's ministers, only on the basis of which religious organization ordained them as ministers.

77. This violation of the Fourteenth Amendment to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT II

### Violation of the Establishment Clause of the U.S. Constitution

78. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

11

79. The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I.

80. The "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

81. Section 36-3-301(a)(2), as amended by 2019 Public Chapter 415, prefers certain religious denominations over others on its face by (a) authorizing marriage solemnization only by leaders whose religion or denomination includes "customs" that provide for ordination "by a considered, deliberate, and responsible act;" and (b) prohibiting those who receive "online ordinations" from solemnizing marriages while granting that benefit to ministers of religious organizations who obtain ordinations in any other manner.

82. Section 36-3-301(a)(2), as applied, prefers certain religious denominations over others by allowing UCLM ministers who were ordained online to solemnize marriages within the state of Tennessee while prohibiting AMM ministers from doing the same.

83. No compelling governmental interest supports Section 36-3-301(a)'s favoritism of certain religious denominations over others.

84. This violation of the Establishment Clause of the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT III

### Violation of the Free Exercise Clause of the U.S. Constitution

85. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

12

86. The First Amendment of the U.S. Constitution, which applies to the states pursuant to the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."

87. AMM chooses to ordain ministers in accordance with its central tenets that all people have the right to solemnize marriage and that all couples have the right to choose who will solemnize their marriage.

88. AMM's ministers express their sincerely held beliefs through officiating marriage ceremonies.

89. Joining people together by celebrating the rites of matrimony is a means through which AMM ministers minister to, or serve, their communities.

90. AMM's ministers express a core tenet of AMM—that "[a]ll people have the right to solemnize marriage"—through solemnizing marriages.

91. Section 36-3-301(a)(2), as written, burdens AMM's and its ministers' free exercise of religion by depriving them the right to officiate weddings as religious ministers.

92. The restrictions imposed by Section 36-3-301(a)(2) on who may solemnize marriages are arbitrary and not supported by any rational basis.

93. Section 36-3-301(a)(2) is not neutral and not of general application because the statute's purpose is to confer a benefit on certain religious groups and not others. As a result, Section 36-3-301(a)(2), is subject to the most rigorous of scrutiny.

94. The burden imposed by the statute is not supported by any compelling governmental interest.

95. This violation of the Free Exercise Clause to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as

13

damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT IV

## Violation of the Free Speech Clause of the U.S. Constitution

96. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

97. The First Amendment of the U.S. Constitution, which applies to the states pursuant to the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech."

98. "Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S.__, 142 S. Ct. 2407, 2022 WL 2295034, at *8 (June 27, 2022).

99. AMM ministers who solemnize marriage in accordance with AMM's core tenet that "[a]ll people have the right to solemnize marriage" engage in an expressive religious activity protected by the Free Speech Clause of the First Amendment.

100. Section 36-3-301(a)(2) is a content-based restriction on speech because it restricts speech facilitating ordination of ministers. The statute's exclusion of ministers who receive "online ordinations" from the privilege of solemnizing marriages cannot be justified without reference to the content of the speech between AMM and its ministers.

101. Section 36-3-301(a)(2) restricts the ability of AMM and its ministers to communicate via the Internet, which the Supreme Court has recognized as a "vast democratic forum" and the "most important place[] . . . for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017).

14

Case 3:24-cv-00247-TRM-DCP   Document 1   Filed 05/31/24   Page 15 of 20   PageID #: 15

102. Section 36-3-301(a)(2) violates AMM's and its ministers' freedom of speech as prohibited by the First Amendment.

103. This violation of the Free Speech Clause to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT V

### Violation of Article 1, Section 3, of the Tennessee Constitution

104. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

105. Article 1, Section 3, of the Tennessee Constitution states "[t]hat all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect, or support any place of worship, or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship."

106. Ordination of ministers is central to AMM's ministry and outreach, and Section 36-3-301(a)(2) burdens AMM's and its members' free exercise of religion by depriving them of the right to solemnize marriages. The restrictions imposed by Section 36-3-301(a)(2) on who may solemnize marriages are arbitrary and not supported by any rational basis.

107. Section 36-3-301(a)(2) is not neutral and not of general application because the statute's purpose is to confer a benefit on certain religious groups and not others. As a result, Section 36-3-301(a)(2) is subject to the most rigorous of scrutiny, and is not supported by any compelling governmental interest.

15

## COUNT VI

### Violation of Article 1, Section 19, of the Tennessee Constitution

108. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

109. The Tennessee Constitution provides: "The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty." Tenn. Const. art. I, § 19.

110. "Article I, Section 19 of the Tennessee Constitution provides at least as much protection of the freedom[] of speech . . . as the First Amendment. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) (citing *Doe v. Doe*, 127 S.W.3d 728, 732 (Tenn. 2004)).

111. Section 36-3-301(a)(2) is a content-based restriction on speech because it restricts speech facilitating ordination of ministers. The statute's exclusion of ministers who receive "online ordinations" from the privilege of solemnizing marriages cannot be justified without reference to the content of the speech between AMM and its ministers.

112. Section 36-3-301(a)(2) restricts the ability of AMM and its ministers to communicate via the Internet, which the Supreme Court has recognized as a "vast democratic forum" and the "most important place[] . . . for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017).

113. Section 36-3-301(a)(2) violates AMM and its ministers' freedom of speech as prohibited by the Article I, Section 19 of the Tennessee Constitution.

## COUNT VII

### Violation of Due Process Clause of the U.S. Constitution

114. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

16

115. The Due Process Clause of the Fourteenth Amendment provides that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

116. The Due Process Clause protects against arbitrary government conduct and prevents states from establishing an "irrefutable assumption" that "operates to deny a fair opportunity to rebut it." *Vlandis v. Kline*, 412 U.S. 441, 446 (1973).

117. The Due Process Clause also requires that "regulated parties should know what is required of them so they may act accordingly." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

118. Section 36-3-301(a)(2) impermissibly denies AMM ministers any fair opportunity to rebut the statute's presumption that ministers receiving "online ordinations" or otherwise not ordained in the statute's specified manner are not qualified to solemnize marriages in Tennessee.

119. Section 36-3-301(a)(2) fails to inform regulated parties as to what is required of them through use of the undefined and vague terms "considered, deliberate, responsible act" and "online ordinations."

120. This violation of the Due Process Clause to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT VIII

### Violation of the Unconstitutional Conditions Doctrine

121. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

122. Under the unconstitutional conditions doctrine, "a state actor cannot constitutionally condition the receipt of a benefit . . . on an agreement to refrain from exercising

17

one's constitutional rights." *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

123. Section 36-3-301(a)(2) grants the authority to solemnize marriages to a limited number of qualified individuals yet denies that authority to those who exercise their religion in a manner protected by the First Amendment but disapproved of by the State.

124. Ministers of AMM and couples who wish to be married by AMM ministers must refrain from exercising their constitutional rights to obtain the benefit of authorization to solemnize marriages.

125. This violation of unconstitutional conditions doctrine is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

Plaintiff respectfully request that the Court grant the following relief:

a. A judgment declaring that Defendants' policy and practice of denying AMM ministers the authority under § 36-3-301 of the Tennessee Code to officiate weddings is unconstitutional under the U.S. Constitution;

b. A judgment invalidating and declaring the following provision of Section 36-3-301(a)(2) unconstitutional under the U.S. and Tennessee Constitutions, facially and as applied to AMM and its ministers:

   1) "Persons receiving online ordinations may not solemnize the right of matrimony."

c. A permanent injunction prohibiting Defendants from enforcing the ordination requirements of Section 36-3-301(a)(2) to the extent those requirements prevent AMM ministers from solemnizing valid marriages in Tennessee;

d. A permanent injunction prohibiting Defendant Johnson from prosecuting AMM ministers under Tennessee Code § 39-16-504 for making a false statement by making the attestation required by Tennessee Code § 36-3-304;

e. An award of costs and attorneys' fees to Plaintiff; and

f. Such other relief as the Court deems just a proper.

Dated: this 31st day of May, 2024             Respectfully Submitted,

**ADAMS AND REESE LLP**

*/s/ Rocklan W. King III*
Rocklan W. King III (TN BPR # 030643)
Stacia M. Daigle (TN BPR # 038533)
1600 West End Ave, Ste 1400
Nashville, TN 37203
Tel: (615) 259-1041
Fax: (615) 678-1514
rocky.king@arlaw.com
stacia.daigle@arlaw.com

**FOSTER GARVEY PC**

Benjamin J. Hodges (*pro hac vice pending*)
    (WSBA # 49301)
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Tel: (206) 447-6282
Fax: (206) 749-1940
ben.hodges@foster.com

Attorneys for Plaintiff